**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DUANE BOYDE,**

        **Plaintiff,**

        **v.**

**CITY OF COLUMBUS,** *et al.*,

        **Defendants.**

        **Case Number 2:23-cv-2543**
        **Judge Edmund A. Sargus, Jr.**
        **Magistrate Judge S. Courter M. Shimeall**

## OPINION AND ORDER

This matter is before the Court on Defendants City of Columbus, Officer Austin Endsley, and Officer Daniel Snyder's Motion for Summary Judgment. (ECF No. 41.) For the reasons stated in this Opinion and Order, the Court **GRANTS in part** Defendants' Motion on the federal-law claims and **DECLINES** to exercise supplemental jurisdiction over the state-law claims.

## BACKGROUND

### I.    Factual Background

Plaintiff Duane Boyde alleges in his Complaint that on August 9, 2022, he agreed to give two strangers a ride in his car in exchange for $40. (Compl., ECF No. 1, ¶¶ 10–15.) The individuals said they needed to pick something up for one of their mothers and, upon their request, Mr. Boyde drove them to a shopping mall, parked around the corner, and waited for them to return. (*Id.* ¶¶ 19–20.) The individuals returned to the car about seven minutes later and asked Mr. Boyde to drive them back to their apartment. (*Id.* ¶ 22.)

At that time, Officer Endsley was on routine patrol when he heard from dispatch that a theft occurred at a retail store and that the suspects had left in a black Mercury, which turned out

to be Mr. Boyde's car. (Endsley Aff., ECF No. 39, PageID 164–65.) The stolen merchandise had a GPS tracker, which allowed officers to locate the car. (*Id.* PageID 164.) Upon locating the car, Officer Endsley parked his cruiser in front of the car, and another officer parked his cruiser behind the car, blocking it in. (*Id.* PageID 165.)

Officer Endsley got out of his cruiser and, while walking up to the car, called out to Mr. Boyde to put his hands up. (Endsley Body-Worn Camera ("BWC") Footage, ECF No. 39, Ex. B, at 2:00–2:10.) Mr. Boyde's window was about halfway open. (*Id.*) Mr. Boyde did not put his hands up. (*Id.*) When Officer Endsley reached the car a few seconds later, he gave the order one more time and Mr. Boyde raised his hands, while Officer Endsley said, "Are you [expletive] deaf?" (*Id.* at 2:10–2:15.) Officer Endsley inserted his arm into the car through the window and unlocked the car door. (*Id.* at 2:15–2:20.) He then opened the door and placed his hands on Mr. Boyde's left wrist and upper arm. (*Id.* at 2:15–2:25.) Upon Mr. Boyde's questioning, which is difficult to discern, Officer Endsley responded, "I'm asking you to step out of the vehicle." (*Id.*) Mr. Boyde pulled back, looked down at his feet, and moved to slide his right foot into a slip-on shoe on the floor. (*Id.*) Officer Endsley said, "No, get out," and pulled Mr. Boyde by the arm out of the car and onto the ground saying, "Get out of the [expletive] car." (*Id.* at 2:25–2:30.)

As he was being pulled out of the car, Mr. Boyde was initially on his feet in a crouched position with his knees and his body leaning forward. (Snyder Slowed Cruiser Camera Footage, ECF No. 39, Ex. E, at 0:45–0:55.) He then fell to the ground, landing on his buttocks. (*Id.*) Officer Endsley pushed Mr. Boyde's left shoulder to the ground, keeping his left arm behind his back and forcing his torso and face to the ground. (*Id.*) Officer Snyder, who arrived on the scene while Officer Endsley was opening the car door, moved in to assist. (Snyder Cruiser Camera Footage, ECF No. 39, Ex. D, at 6:40–7:15.) He pulled Mr. Boyde's right arm around and held

Mr. Boyde down while Officer Endsley handcuffed him. (*Id.*) Mr. Boyde did not resist while he was being handcuffed. (*Id.*)

Mr. Boyde complained of pain in his shoulder, arm, and face on the scene, so the officers called EMS to the scene. (Compl., ¶¶ 52–53, 59; Synder Cruiser Camera Footage at 32:00–37:45.) Mr. Boyde asserts that he later went to the emergency room because he still could not move his shoulder without significant pain. (Compl., ¶ 61; *see also* ECF No. 48, PageID 236–45.)

Stolen merchandise was discovered in Mr. Boyde's car. (Police Report, ECF No. 39, Ex. A, PageID 168.) The two other individuals were taken to Columbus Police Department headquarters where they were processed and interviewed. (*Id.*) Mr. Boyde was issued a citation for failure to comply and released. (*Id.* PageID 167–68.) The county prosecutor later dismissed Mr. Boyde's citation. (ECF No. 41, PageID 174.)

## II.     Procedural Background

One year after the incident, Mr. Boyde, represented by counsel, filed this suit under 42 U.S.C. § 1983 against the City of Columbus, Officer Endsley, and Officer Snyder alleging violations of his Fourth and Fourteenth Amendment rights; namely, excessive force and malicious prosecution. (Compl. ¶¶ 76–80.) Also, although not clearly stated, he appears to bring a *Monell* claim against the City of Columbus. (*Id.* ¶ 78.) He also brings four state-law claims against the Officers: battery, civil liability for criminal acts under Ohio Revised Code § 2307.60, malicious prosecution, and false arrest/imprisonment. (*Id.* ¶¶ 81–88.) He alleges that Defendants' actions have caused him to suffer "loss of income and legal and other expenses, physical pain and suffering, reputational harm, emotional anguish, embarrassment, and fear." (Compl. ¶ 75.)

In June 2025, Mr. Boyde's counsel withdrew from the case, citing irreconcilable differences with Mr. Boyde. (ECF Nos. 15, 16, 18.) The Court set a deadline for Mr. Boyde to obtain new counsel. (ECF No. 20.) Mr. Boyde did not retain new counsel and has been proceeding *pro se* since. (E.g., ECF Nos. 23, 44.)

In March 2026, Defendants filed a Motion for Summary Judgment. (ECF No. 41.) Mr. Boyde requested an extension to file his response in opposition, with a deadline of April 30, 2026. (ECF No. 44.) The Court partially granted Mr. Boyde's request, giving him until April 20 to file a response in opposition. (ECF No. 45.) On April 29, Mr. Boyde filed an untimely response in opposition. (ECF No. 46.) Defendants filed a timely reply. (ECF No. 47.)

On June 22, 2026, Mr. Boyde filed a motion asking the Court to accept his untimely response in opposition to Defendants' motion for summary judgment and for leave to file a "supplemental memorandum in opposition," which the Court construed as a motion to file a sur-reply. (ECF No. 48.) The Court granted in part and denied in part the motion. (ECF No. 49.) The Court accepted Mr. Boyde's untimely response in opposition (ECF No. 46) and will consider it when ruling on the instant Motion for Summary Judgment. (ECF No. 49.) Additionally, the Court permitted Mr. Boyde to file his medical records, which were attached to his proposed sur-reply, but the Court will not consider the portion of Mr. Boyde's sur-reply aimed at addressing Defendant's legal arguments, as he had an opportunity to address Defendant's legal arguments in his response in opposition. (*Id.*)

The Court turns to Defendants' Motion for Summary Judgment. (ECF No. 41.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

4

movant has the burden of showing that the nonmoving party lacks evidence to support an essential element of its claim. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the court must view the factual evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

A genuine issue of material fact exists if the nonmoving party can present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frenchko v. Monroe*, 160 F.4th 784, 795 (6th Cir. 2025) (quoting *Liberty Lobby*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

Filings submitted by *pro se* plaintiffs are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A plaintiff's status as a *pro se* litigant, however, does not alter his burden to support his factual assertions with admissible evidence. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

## ANALYSIS

Defendants move for summary judgment on all claims. (Mot., ECF No. 41.) First, they argue that Officers Endsley and Snyder are entitled to qualified immunity on Mr. Boyde's

5

excessive force claim. (*Id.* PageID 176–81.) Further, they argue that Officers Endsley and Snyder are entitled to summary judgment on Mr. Boyde's federal malicious prosecution claim and the state-law claims because he cannot satisfy the elements of each claim. (*Id.* PageID 181–83, 185–87.) They also argue that the City is entitled to summary judgment on the *Monell* claim because Mr. Boyde presents no evidence to support such a claim. (*Id.* PageID 183–85.)

Mr. Boyde's response in opposition does not directly address most of Defendants' arguments. (*See* Opp., ECF No. 46.) Instead, he emphasizes that the video footage shows that he "was visibly complaint, immediately obeyed commands once they were audible, and was subjected to force without being given a meaningful opportunity to comply." (*Id.* PageID 208.) He asserts that he suffered a laceration to his shoulder and has ongoing pain in his neck and back because of the incident. (*Id.* PageID 221.)

Although Mr. Boyde does not address many of Defendants' arguments, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). On summary judgment, the moving party "always bears the burden of demonstrating the absence of a genuine issue as to a material fact," and the district court must review the evidence submitted by the movant to determine whether it carried its burden. *Id.* Accordingly, the Court proceeds to analyze Defendants' arguments and the evidence.

## I.     Qualified Immunity

Qualified immunity shields government officials from liability under 42 U.S.C. § 1983 as long as they did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Plumhoff v. Rickard*, 572

6

U.S. 765, 778 (2014). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

Once a qualified immunity defense is raised, the plaintiff has the burden of overcoming the defense by showing both that (1) the officer violated a constitutional right and (2) the right was clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024). The Court may consider the prongs in either order. *Gambrel v. Knox County*, 25 F.4th 391, 401 (6th Cir. 2022). The qualified immunity defense does not change the summary judgment standard and a court "must view genuine factual disagreements in the light most favorable to the plaintiff." *Id.* at 400.

### A. Violation of Constitutional Right

Officers Endsley and Snyder are entitled to qualified immunity because no constitutional violation occurred. Given that Mr. Boyde's § 1983 claims—excessive force and malicious prosecution—are both subject to qualified immunity, the Court addresses each claim separately. *See, e.g.*, *Coffey v. Carroll*, 933 F.3d 577 (6th Cir. 2019).

#### 1. Excessive Force

The Fourth Amendment protects a person's right to be free from "unreasonable seizures," including the right to be free from excessive force by police during a seizure. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). "To determine whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies the 'objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable police officer on the scene and not with 20/20 hindsight.'" *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)); *see*

*also Hopper v. Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (stating that excessive force claims under the Fourth and Fourteenth Amendments are analyzed under an objective-reasonableness standard). Courts consider three non-exhaustive factors to guide the analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006)).

Defendants argue that Officers' use of force was reasonable under the circumstances because (1) they were responding to a potentially serious crime, (2) they did not know if the occupants of the car were armed; (3) at first, they were outnumbered; and (4) Mr. Boyde tightened his grip on the steering wheel and pulled away when Officer Endsley tried to remove him from the car. (Mot., PageID 178.) Further, they argue that the level of force was reasonable because Mr. Boyde was "removed from the vehicle in the least harmful way possible, consistent with the need to remove [Mr.] Boyde from the vehicle *swiftly*, before a threat could develop." (*Id.*)

In opposition, Mr. Boyde generally argues that the video footage shows that he "was visibly complaint, immediately obeyed commands once they were audible, and was subjected to force without being given a meaningful opportunity to comply." (Opp., PageID 208.)

Viewing the facts of the case from the perspective of a reasonable officer on the scene, the Court concludes that Mr. Boyde cannot establish a violation of his constitutional right to be free from excessive force. The Officers knew that a theft had occurred and the GPS tracker on the stolen merchandise led them to that car. They did not know whether Mr. Boyde was an unwitting or deliberate driver of the getaway car. They also did not know if the theft was an

armed robbery and whether the vehicle's occupants were armed at the time of the stop. Although Mr. Boyde argues that the Officers had no information suggesting that he was armed (Opp., PageID 217), the Officers did not know the extent of Mr. Boyde's involvement in the theft or his relationship to the other occupants, who also could have been armed. Under those circumstances, it was reasonable for the Officers to believe the underlying crime was potentially dangerous and the car's occupants may have posed a serious threat. *See Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008).

Further, from the view of a reasonable police officer, Mr. Boyde demonstrated some noncompliance to Officer Endsley's commands. Mr. Boyde did not raise his hands the first time Officer Endsley ordered him to do so. Mr. Boyde argues that the first command was not audible, and he complied once he heard the command a second time. (Opp., PageID 209, 218.) Even accepting Mr. Boyde's assertion as true, Officer Endsley did not know whether Mr. Boyde heard the command or was just refusing to comply. Then, when Officer Endsley tried to remove Mr. Boyde from the car, Mr. Boyde pulled away. It is unclear from the video footage whether Mr. Boyde tightened his grip on the steering wheel, but it is apparent that Mr. Boyde pulled back slightly and looked down at his feet.

Given the totality of the circumstances described above, it was reasonable for the Officers to use some limited degree of force to conduct the stop. *See Graham*, 490 U.S. at 396. The use of force was limited to removing Mr. Boyde from the car and restraining him after he failed to comply with Officer Endsley's commands. *See Dunn*, 549 F.3d at 354–55. The Sixth Circuit distinguishes between active resistance, which may justify a greater degree of force, and passive resistance. *See Moore v. Oakland County*, 126 F.4th 1163, 1168–69 (6th Cir. 2025). Here, even

if Mr. Boyde's conduct is characterized as passive resistance, at most, the Officers' use of force was reasonable because it did not escalate to tasing, pepper spraying, or beating. *Id.*

For these reasons, no constitutional violation of excessive force occurred.

### 2. Malicious Prosecution

To establish a federal malicious prosecution claim, a plaintiff must demonstrate that: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

Defendants argue that Mr. Boyde cannot satisfy the third prong—a loss of liberty apart from the initial arrest. (Mot., PageID 181–82.) The Court agrees. Mr. Boyde was detained on the scene and released with a citation, which was ultimately dismissed. He suffered no loss of liberty apart from the initial seizure. Further, being required to appear at a court hearing as a result of a citation is not a loss of liberty apart from the initial arrest. *See Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017). Accordingly, no constitutional violation of malicious prosecution occurred.

### B. Clearly Established Right

Because the Court finds that no constitutional violation occurred, the Court need not analyze the second prong of qualified immunity—whether a right was clearly established. *See Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025). Officers Endsley and Snyder are entitled to qualified immunity on the § 1983 excessive force and malicious prosecution claims.

## II.     *Monell* Claim

A municipality may be held liable under 42 U.S.C. § 1983 for customs or policies that violate a private individual's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (explaining that a municipality is only responsible for its own actions and wrongdoings and not for the actions of its employees). A municipality's customs or policies can take the form of (1) official policy or legislative enactment, (2) decisions or ratifications of final decisionmakers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *See Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). To succeed on a *Monell* claim, the plaintiff must establish the existence of a "causal link between a municipal policy and custom and the alleged constitutional deprivation." *Hart v. City of Grand Rapids*, 138 F.4th 409, 425 (6th Cir. 2025) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Mr. Boyde alleges that the City of Columbus is liable for constitutional violations for "its deliberate indifference to the policies, training, supervision and discipline needed to prevent its police officers from using excessive force." (Compl., ¶ 78.) Defendants assert that Mr. Boyde has no evidence to support these allegations. (Mot., PageID 184–85.) Mr. Boyde's response does not put forth any evidence that could support a *Monell* claim. As explained above, Mr. Boyde must establish a causal link between a city policy or custom and the alleged constitutional deprivation. He does not do so. Further, as explained above, the Court finds that no constitutional deprivation occurred. Accordingly, the City of Columbus is entitled to summary judgment on the *Monell* claim.

11

### III.     State-Law Claims

Defendants move for summary judgment on Mr. Boyde's state-law claims: battery, civil liability for criminal acts under Ohio Revised Code § 2307.60, malicious prosecution, and false arrest/imprisonment. (Mot., PageID 185–87.)

A district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. 28 U.S.C. § 1367(c)(3). "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

The Court finds that exercising supplemental jurisdiction over the state claims after granting summary judgment on the federal claims would not serve judicial economy, convenience, or comity, and therefore declines to do so. *See Williams v. Addison Cmty. Schs.*, 168 F.4th 791, 794–95 (6th Cir. 2026). An Ohio state court is better equipped to interpret Mr. Boyde's state-law claims. Accordingly, the battery, civil liability for criminal acts under Ohio Revised Code § 2307.60, malicious prosecution, and false arrest/imprisonment claims (Counts 2–5) are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated above, (ECF No. 41) Defendants City of Columbus, Officer Austin Endsley, and Officer Daniel Snyder's Motion for Summary Judgment is **GRANTED in part**. The Court grants Defendant's Motion on Plaintiff's federal-law claims under the Fourth and

12

Fourteenth Amendments (Count 1). The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims (Counts 2–5) and **DISMISSES without prejudice** those claims.

The Clerk is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**7/7/2026**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                          **UNITED STATES DISTRICT JUDGE**